ORDERED.

Dated:  October 26, 2016

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

John Dargon Stanton, III,

     Debtor.

_____/

Case No. 8:11-bk-22675
Chapter 7

## MEMORANDUM OPINION ON FEE APPLICATION

In *Baker Botts v. ASARCO*, the United States Supreme Court held that Bankruptcy Code § 330(a) does not authorize attorney's fees for work performed defending a fee application because that work is not performed for the estate.[1] Here, the U.S. Trustee claims *Baker Botts* precludes a professional employed under § 327 from recovering fees for work supplementing his fee application after the U.S. Trustee objected to it as deficient. Because the challenged fees were for work more akin to the preparation—rather than defense—of a fee application, the Court concludes the work was in service of the bankruptcy estate and therefore recoverable under § 330(a).

---

[1] 135 S. Ct. 2158, 2163, 192 L. Ed. 2d 208 (2015).

**Background**

The Chapter 7 Trustee employed Herb Donica (of the Donica Law Firm) as his

attorney[2] and Ed Rice (of Glenn Rasmussen, P.A.) as special counsel.[3] As Trustee's counsel,

Donica and Glenn Rasmussen pursued fraudulent transfer claims against the Debtor's ex-

wife.[4] Donica and Glenn Rasmussen ultimately settled those claims on the estate's behalf.

Under the settlement, the bankruptcy estate recovered $3.5 million in proceeds from the sale

of certain stock, as well as real property in California that eventually sold for nearly $3

million.[5] After the Court orally approved the proposed settlement, Donica filed his initial fee

application.[6]

In his first interim fee application, Donica sought $748,875 in fees.[7] Donica's time,

which totaled nearly 2,000 hours, was divided into two categories: time spent in the main

bankruptcy case and time spent in the fraudulent transfer proceeding.[8] According to his fee

application, Donica spent more than 910 hours in the main case (for a total of $335,550 in

fees) and more than 1,085 hours in the fraudulent transfer proceeding (for a total of

$413,325 in fees).

---

[2] Doc. Nos. 68 & 70.

[3] Doc. Nos. 208 & 231.

[4] *Hyman v. Stanton, et al.*, Adv. No. 8:13-ap-00577-MGW.

[5] Doc. No. 554.

[6] Doc. Nos. 564. Glenn Rasmussen also filed a fee application. Doc. No. 565. That fee application will be dealt with by a separate order.

[7] Doc. No. 564.

[8] *Id.* at 3.

Donica's fee application contained all the information required for a chapter 7 fee application under Local Rule 2016-1. The fee application included the name of the individuals who performed the work,[9] the amount of time expended for each item of work,[10] the hourly rate requested,[11] the date of employment,[12] a discussion of the criteria relevant in determining compensation to be awarded,[13] a detail of the reimbursable costs,[14] and a verification stating the fees and costs are reasonable for the work performed and that the application is true and correct.[15]

The U.S. Trustee objected to Donica's first interim fee application.[16] The U.S. Trustee asserted three grounds for his objection to Donica's fee application: (1) Donica failed to provide any meaningful breakdown on how he spent the 900 hours in the main case; (2) Donica failed to describe how he divided his labor with Glenn Rasmussen in the fraudulent transfer proceeding or demonstrate that the lawyers did not unnecessarily duplicate services; and (3) Donica failed to provide any meaningful narrative regarding the

---

[9] *Id.*

[10] *Id.* at Ex. B. Donica's fee application attached 158 pages of billing statements detailing the work performed on the case. *Id.*

[11] *Id.* at 3–4.

[12] *Id.* at 2–3.

[13] *Id.* at 5–9.

[14] *Id.* at Ex. C.

[15] *Id.*

[16] Doc. No. 588.

results obtained from his services.[17] In effect, the U.S. Trustee insisted on the level of detail required for a fee application in a chapter 11 case.[18]

In response to the U.S. Trustee's objection, Donica opted to supplement his initial fee application.[19] Although he believed the time records attached to his initial application were self-explanatory, Donica filed a detailed 18-page supplement that addressed the U.S. Trustee's objections.[20] In particular, Donica's supplement to his fee application provided a breakdown of the number of hours spent on eight different matters, including five adversary proceedings; a narrative for each of those eight matters; and a description of how labor was divided between Donica and Glenn Rasmussen on the fraudulent transfer proceeding.[21]

At a hearing on Donica's fee application, the U.S. Trustee conceded the fee supplements largely resolved the "informational" objections (i.e., failure to provide a breakdown, description of division of labor, and meaningful narrative), although there apparently was still some dispute over the possible duplication of services. So the Court approved an interim distribution on the application, but ordered that $75,000 be held back pending further ruling on the duplication issue.[22] After a further hearing, the Court approved

---

[17] Doc. No. 588 at 1–2.

[18] Local Rule 2016-1. Local Rule 2016-1 requires chapter 11 professionals to, among other things, itemize their time by project categories and provide a narrative of the types of services performed, the necessity for performing the services, the results obtained, and the benefit to the estate.

[19] Doc. Nos. 593.

[20] *Id.*

[21] *Id.* at 3–18.

[22] Doc. No. 609 at ¶¶ 1 & 2.

Donica's fee application in its entirety and ruled that Donica was entitled to the $75,000 originally held back.[23]

When Donica filed a second interim fee application seeking $33,840 for time spent on his initial fee application (among other fees),[24] the U.S. Trustee objected that $27,520 of the fees were unrecoverable under the Supreme Court's *Baker Botts* decision.[25] In his objection, the U.S. Trustee advocates a bright-line rule for determining whether fees are recoverable under *Baker Botts*: if time is spent on a fee application after an objection has been lodged, then that time is necessarily for work defending the fee application and therefore unrecoverable under § 330(a).[26] Here, Donica incurred $27,520 in fees after the U.S. Trustee objected to his fee application. The U.S. Trustee, however, reads *Baker Botts* too broadly.

## Conclusions of Law

In *Baker Botts*, the Supreme Court considered whether time spent defending a fee application was recoverable under Bankruptcy Code § 330(a).[27] Ordinarily, under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[28] The question before the Court in *Baker Botts* was whether Congress intended to depart from the American Rule in enacting § 330(a), which provides

---

[23] Doc. No. 624.

[24] Doc. No. 685.

[25] Doc. No. 706. The Department of Justice, on the Internal Revenue Service's behalf, joined in the U.S. Trustee's objection. Doc. No. 721.

[26] Doc. No. 706. The IRS contends it is difficult if not impossible to separate time spent defending a fee application from time spent supplementing one. Doc. No. 721.

[27] 135 S. Ct. at 2162–63.

[28] *Id.* at 2164.

that a bankruptcy court may award a professional employed under § 327 "reasonable compensation for actual, necessary services."[29]

The Court concluded that § 330's text "neither specifically or explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other."[30] Section 330(a) authorizes reasonable compensation only for "actual, necessary services rendered," and the "word 'services' refers to 'labor performed for another.'"[31] Justice Thomas, writing for the majority, observed that use of the term "services" imposed a significant qualification on a court's ability to award fees under § 330(a): only "work done *in service of* the estate administrator" is compensable.[32]

In rejecting the Government's argument that time spent defending a fee application must be compensable because the time spent preparing one is, Justice Thomas explained that a professional's preparation of a fee application is, in fact, a service to the estate.[33] A detailed, itemized bill allows the trustee to understand the fees incurred. A professional's defense of a fee application, by contrast, provides no similar benefit to the estate.

To illustrate the difference between preparing a fee application and defending one, Justice Thomas offers an analogy:

> By way of analogy, it would be natural to describe a car mechanic's preparation of an itemized bill as part of his

---

[29] 11 U.S.C. § 330(a).

[30] *Baker Botts*, 135 S. Ct. at 2165.

[31] *Id.* (quoting Webster's New International Dictionary 2288 (def. 4) (2d ed. 1934)). Although not specifically discussed by the Court, only "services" that are reasonably likely to benefit the debtor's estate or that are necessary to the administration of the case are compensable. 11 U.S.C. § 330(a)(4).

[32] *Baker Botts*, 135 S. Ct. at 2165.

[33] *Id.* at 2167.

"services" to the customer because it allows a customer to understand—and, if necessary, dispute—his expenses. But it would be less natural to describe a subsequent court battle over the bill as part of the "services rendered" to the customer.[34]

The touchstone, then, for determining whether fees are recoverable under *Baker Botts* is not when the fees were incurred (i.e., before or after an objection) but rather whether they were incurred in service to the estate.

Here, the record reflects that the $27,520 in fees Donica incurred after the U.S. Trustee objected to his first fee application were for work supplementing his initial fee application. In particular, Donica filed an 18-page supplement to his fee application[35] and a 21-page response to the U.S. Trustee's objection.[36] The supplement and response provided a breakdown of Donica's fees, a description of how labor was divided with Glenn Rasmussen, and a narrative of the results achieved—information the U.S. Trustee says should have been in the initial fee applications. To use Justice Thomas' analogy, Donica's work supplementing his fee application and responding to the U.S. Trustee's objection was akin to the mechanic's preparation of an itemized bill as part of his "services" to the customer.

Had the U.S. Trustee simply objected to Donica's fees because they were unnecessarily duplicative, the outcome might be different. A fight over whether fees were unnecessarily duplicative is more akin to time spent on a subsequent court battle over the mechanic's bill, which would not properly be understood as part of his services. Here, the parties were not fighting over the amount of the bill but whether it was detailed enough.

---

[34] *Id.*

[35] Doc. No. 593.

[36] Doc. No. 621.

Although Donica's fees were incurred after this case was converted to chapter 7, the U.S. Trustee was asking for the type of detail required in a chapter 11 case. Under Local Rule 2016-1, fee applications filed by chapter 7 professionals need only contain the name of the person doing the work, the amount of time expended for each item of work, the requested hourly rate, the date of employment, a discussion of the criteria relevant for determining compensation, a detail of reimbursable costs, and a verification that the fees and costs are reasonable and that the application is true and accurate.[37] The U.S. Trustee, however, insisted on a detailed description of the time worked; that the time be itemized by project category; and that the application contain a narrative of the services provided and the results obtained—items only required for chapter 11 cases.[38] Given the complexity of this case and the amount of fees requested (collectively, $1.7 million in the initial fee applications), the Court understands why the U.S. Trustee insisted on the level of disclosure required in a chapter 11 case, even if not required.

But the proper way to insist on that level of detail would have been for the U.S. Trustee to ask that the order approving Donica's retention require him to comply with Local Rule 2016-1's requirements for fee applications in chapter 11 cases or to move to compel Donica to do so, either of which the Court would have readily granted. Had the U.S. Trustee done so, and had Donica provided the level of detail in his initial fee application that he did in his supplement, there is no question he would have been compensated for it. The only question would have been whether the fees were commensurate with the level and

---

[37] Local Rule 2016-1.

[38] *Id.*

8

skill reasonably required to prepare the application.[39] And the U.S. Trustee never complained that the time spent on the supplement and response to his objection was unreasonable. The fact that the U.S. Trustee sought to impose a heightened level of disclosure through an objection to Donica's fee application does not change the nature of the work Donica performed and whether that work should be compensable under § 330(a).

The additional disclosure Donica provided benefitted the administration of the estate. Among other things, it allowed the Chapter 7 Trustee, U.S. Trustee, and other parties in interest to understand the work Donica performed and, if necessary, the ability to dispute his fees. Under *Baker Botts*, it is the nature of the work—not when it was performed—that determines whether it is compensable. Because Donica's $27,520 in fees was for work in service of the estate, they are recoverable as reasonable compensation for services under § 330(a).

The U.S. Trustee worries this ruling will lead to a de facto two-step fee application process. According to the U.S. Trustee, § 327 professionals will be encouraged to file "bare-bones" fee applications. Only when their fee applications are challenged will professionals supplement their applications to provide the required level of detail. The U.S. Trustee says there is no disincentive to discourage professionals from filing bare-bones applications since, under this Court's ruling, they will be compensated for supplementing them. While understandable, the U.S. Trustee's concerns are misplaced.

For starters, the Court's ruling is not likely to encourage bare-bones fee applications. As a practical matter, the level of detail required in chapter 7 cases is not particularly onerous, and most chapter 7 fee applications are for relatively modest sums of money. To be

---

[39] 11 U.S.C. § 330(a)(6).

sure, this Court's ruling applies to chapter 11 fee applications—and Local Rule 2016-1 does impose more onerous requirements in chapter 11 cases. But the U.S. Trustee overlooks an important fact: professionals are compensated for their time preparing fee applications. Because they are compensated for their time, there is no reason to believe professionals will file bare-bones fee applications as a matter of course.

Moreover, while the Court certainly is not encouraging a two-step fee application process, the ultimate harm is minimal. Assume it should take a professional ten hours to properly prepare a fee application. Under § 330(a), the professional is entitled to be compensated for all ten hours. What if the professional only spends two hours on the fee application initially, but then spends an additional eight hours supplementing it after an objection by the U.S. Trustee? Under this Court's ruling, the professional would be compensated for a total of ten hours—the same as if the professional had properly prepared the fee application in the first place. So even if the Court's ruling results in the occasional two-step fee application process, which the Court certainly does not encourage, the debtor and the estate are no worse off.

Finally, the U.S. Trustee's proposed bright-line rule—i.e., any fees incurred supplementing a fee application after it has been objected to are unrecoverable—would cause more problems than the minor ones it solves. Specifically, the U.S. Trustee's bright-line rule is more likely to require overdisclosure than it is to prevent underdisclosure since professionals will know they will not be compensated for any work once someone lodges an objection to their fee application. The harm from the overdisclosure caused by the U.S. Trustee's bright-line rule is primarily twofold: (1) because professionals are entitled to compensation for preparing fee applications, overdisclosure will increase the cost of estate

administration; and (2) to the extent the additional time professionals spend on disclosure is unreasonable, the Court and parties will face increased time and expense litigating over the reasonableness of fees. Those two problems outweigh any benefit from the U.S. Trustee's proposed bright-line rule.

### Conclusion

The takeaway from the Supreme Court's decision in *Baker Botts* is clear: it is the nature of the work—not when it is performed—that determines whether it is compensable. Only work done *in service of* the estate administrator is compensable. Because supplementing the detail provided in his initial fee application benefitted the estate and was necessary for the administration of the case, Donica is entitled to recover $27,520 in fees incurred performing that work. The Court will approve Donica's second interim fee application in its entirety, including the $27,520 in fees supplementing his initial fee application, by separate order.

Attorney Herbert R. Donica is directed to serve a copy of this Memorandum Opinion on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

**Herbert R. Donica, Esq.**
Donica Law Firm P.A.
106 South Tampania Avenue, #250
Tampa, FL 33609
*Counsel for the Chapter 7 Trustee*

**Benjamin E. Lambers, Esq.**
Timberlake Annex
501 E. Polk Street, Suite 1200
Tampa, FL 33602
*Trial Attorney for United States Trustee—Region 21*